[Crim. No. 7462. In Bank. Jan. 28, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. GERALDINE W. ALOTIS, Defendant and Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood, Robert J. Lord and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Harold J. Ackerman and William Drake for Defendant and Respondent.

PETERS, J.—The sole question presented on this appeal is whether the trial court was prohibited from granting probation to defendant under the provisions of section 1203 of the Penal Code. For reasons hereafter stated, we are of the opinion that the trial court had such power, and that its order so providing should be affirmed.

Defendant was charged with assault with the intent to commit murder (Pen. Code, § 217), which is a felony. She pleaded not guilty, and waived a jury trial. During the trial the district attorney, by stipulation, filed an amended information charging, in a second count, assault with a deadly weapon or by means of force likely to produce great bodily injury (Pen. Code § 245). That section provides, in the alternative, that such offense "is punishable by imprisonment in the state prison not exceeding 10 years, or in a county jail not exceeding one year, or by fine ... or by both such fine and imprisonment." Thus the very section creating the crime makes it a felony or misdemeanor, dependent solely upon the sentence imposed.

Defendant pleaded guilty to the second count, and the first count was dismissed. The court, thereupon, sentenced the defendant to one year in the county jail and suspended that sentence. After the court had thus, by its sentence, determined that the offense was a misdemeanor, it imposed three years probation, subject to conditions. The district attorney moved to vacate the probation order, admitting that the court could have sentenced defendant to one day in the county jail, and/or imposed a one dollar fine, but contended that the court had no power to grant probation under the facts of this

case. The record shows that had the trial court believed it had no power to grant probation it would have imposed a one-day sentence, but since it believed it had such power, determined that it would be best for defendant and for society if that power were exercised. It denied the motion to vacate. The People appeal, contending that, since defendant was admittedly armed with a deadly weapon, the trial court was without power to grant probation under the terms of section 1203 of the Penal Code.

The record shows that defendant is the sister-in-law of the victim of the assault, whose name is Christ Alotis. Christ is the eldest of several brothers, and was the dominant and dominating member of that family. A few months after the marriage of defendant to Christ's brother, Christ forcibly seduced her. Thereafter, an intimate relationship developed between Christ and defendant. The defendant did not discourage this relationship (it continued for some 14 years), until she discovered that Christ was involved with several other women. In order to "settle" her relationship with him defendant arranged a meeting with Christ at a motel. She armed herself with a loaded gun, which she claimed was necessary because it was the only way to make Christ "just sit still long enough to give me a yes or no." It is quite apparent that Christ had fully intimidated defendant.

In the motel room defendant stayed in a corner of the room holding the gun, and Christ sat on the bed drinking vodka. They carried on an apparently calm discussion for over an hour when, according to defendant's uncontradicted testimony, Christ took off his belt, made a crude and highly insulting remark to her, and began to move threateningly toward her. She fired a single shot past him into the headboard, but Christ continued to move toward her, and in the ensuing struggle Christ was shot five times. Christ's wounds were at widely scattered points on his body. Defendant sustained various bruises in the struggle.

Defendant immediately professed regret at what she had done. Christ, badly injured but coherent, ordered defendant to clean up the motel room and to drive him to a hospital. In order, apparently, to protect defendant, Christ entered the hospital alone and told defendant to leave.

Both the victim and defendant's husband candidly admitted to the probation officer that they were the ones really responsible for what had occurred. It is apparent that Christ was an uncooperative prosecution witness. He was not called

at the trial, and was called during the preliminary hearing only to answer several questions concerning ownership of a certain car.

The trial court requested a probation report. The probation officer recommended against probation. The trial judge refused to follow the recommendation, imposed the light sentence, and granted probation. The trial court's reasons for imposing the light sentence and for granting probation were stated as follows:

"THE COURT: . . . Here we have a woman with three minor children, never been in any type of trouble before, has demonstrated a motherly concern for her children, has done everything to bring her children up properly. Pressures are exerted upon her and through an impulse commits a crime that she did commit. So far as her record is concerned, so far as anything we can learn about her is concerned, punishment is not the function here of the Court. It will serve no useful purpose except to break up a family that is now together again. So far as rehabilitation is concerned she is rehabilitating herself without the aid of anyone but the psychotherapist. While the crime was one of violence, yet it is understandable. I wish we could place restraints upon those who I feel are more responsible for this than she is, but they are not before this Court and I can place restraints only upon her. I am not going to follow the recommendation of the probation officer. I shall grant probation in this case. I am satisfied that she will never repeat this offense or any other type of offense. All she needs is a little help from the psychotherapist which she is receiving now.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"An additional reason why I am not sentencing her to jail is the letter which I received from Dr. Polos who has been treating her. He states 'In my opinion my prognosis is good and treatment if interrupted at this time would greatly suffer. In other words, much of what has been gained might be jeopardized and further treatment would require starting anew. It is further my opinion that she is not a danger or menace to the health and safety of herself and others at this time. In view of her need in the home I feel that much damage would be done by this woman not being allowed to continue treatment on an out-patient basis.' "

The judge then sentenced her to one year in the county jail, suspended that sentence, and then granted probation. Before granting probation the court orally found that the

gun with which defendant was shot five times "was not used as a deadly weapon," apparently believing that this finding was sufficient to take the case out of section 1203 of the Penal Code.

That section provides (numbers have been placed in front of each paragraph for ready reference) :

(1) "After the conviction by plea or verdict of guilty of a public offense not amounting to a felony, in cases where discretion is conferred on the court or any board or commission or other authority as to the extent of the punishment, the court, upon application of the defendant or of the people or upon its own motion, may summarily deny probation, or at a time fixed may hear and determine in the presence of the defendant the matter of probation of the defendant and the conditions of such probation, if granted. If probation is not denied, and in every felony case in which the defendant is eligible for probation, before any judgment is pronounced, and whether or not an application for probation has been made, the court must immediately refer the matter to the probation officer to investigate and to report to the court, at a specified time, upon the circumstances surrounding the crime and concerning the defendant and his prior record, which may be taken into consideration either in aggravation or mitigation of punishment. The probation officer must thereupon make an investigation ... must make a written report to the court ... and must accompany said report with his written recommendations, ... as to the granting or withholding of probation to the defendant and as to the conditions of probation if it shall be granted. ... If [after considering said report] the court shall determine that there are circumstances in mitigation of punishment prescribed by law, or that the ends of justice would be subserved by granting probation to the defendant, the court shall have power in its discretion to place the defendant on probation as hereinafter provided; ..."

(2) "In every misdemeanor case, the court may, at its option refer the matter to the probation officer for investigation and report or summarily deny probation or summarily grant probation."

(3) "The Legislature hereby expresses the policy of the people of the State of California to be that, except in unusual cases where the interest of justice demands a departure from the declared policy, no judge shall grant probation to any person who shall have been convicted of robbery, burglary or

arson, and who at the time of the perpetration of said crime or any of them or at the time of his arrest was himself armed with a deadly weapon (unless at the time he had a lawful right to carry the same), *nor to a defendant who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted,* nor to one who in the perpetration of the crime of which he was convicted wilfully inflicted great bodily injury or torture, nor to any such person unless the court shall be satisfied that he has never been previously convicted of a felony in this State nor previously convicted in any other place of a public offense which would have been a felony if committed in this State.'' (Italics added.)

(4) ''Probation shall not be granted to any person who shall have been convicted of burglary with explosives, rape with force or violence, murder, assault with intent to commit murder, attempt to commit murder, train wrecking, kidnaping, escape from a state prison, conspiracy to commit any one or more of the aforementioned felonies, and who at the time of the perpetration of said crime or any of them or at the time of his arrest was himself armed with a deadly weapon (unless at the time he had a lawful right to carry the same), *nor to a defendant who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted,* nor to one who in the perpetration of the crime of which he was convicted wilfully inflicted great bodily injury or torture, nor to any defendant unless the court shall be satisfied that he has not been twice previously convicted of felony . . . ; nor to any defendant convicted of . . . [all of the crimes listed above in this paragraph plus extortion and the sex crimes in sections 286, 288 and 288a] unless the court shall be satisfied that he has never been previously convicted of a felony . . . ; nor to any defendant unless the court shall be satisfied that he has never been previously convicted of a felony . . . and at the time of the perpetration of said previous offense or at the time of his arrest for said previous offense he was himself armed with a deadly weapon (unless . . .) or he personally used or attempted to use a deadly weapon upon a human being in connection with the perpetration of said previous offense or in the perpetration of said previous offense he wilfully inflicted great bodily injury or torture; nor to any public official. . . .'' (Italics added.)

This section in its present form is confusing and ambiguous. There appears to be a direct conflict in certain language

in paragraphs (3) and (4).[1] Both paragraphs contain an enumeration of certain crimes and deny to persons who commit such crimes while armed with a deadly weapon the privilege of probation, but both also deny probation to any defendant "who used or attempted to use a deadly weapon upon a human being in connection with the perpetration *of the crime* of which he was convicted." (Italics added.)

This apparent conflict was reconciled in the case of *People* v. *Southack,* 39 Cal.2d 578, 591 [248 P.2d 12], in which it was held that the italicized portions of paragraphs (3) and (4) controlled the balance of those paragraphs, and that, therefore, probation was to be denied to a defendant convicted of any crime (at least felony) where a deadly weapon was used, including crimes other than those enumerated. This interpretation has been consistently followed. (*People* v. *Henderson,* 151 Cal.App.2d 407 [311 P.2d 594] (assault with a deadly weapon); *People* v. *Johnson,* 140 Cal.App.2d 613, 616-617 [295 P.2d 493] (manslaughter); *People* v. *Young,* 88 Cal.App.2d 129, 137 [198 P.2d 384] (assault by means of force likely to produce great bodily injury); *People* v. *Pilgrim,* 73 Cal.App.2d 391, 398-400 [166 P.2d 636] (manslaughter); *People* v. *Harshaw,* 71 Cal.App.2d 146, 149 [161 P.2d 978] (assault with intent to commit rape); *In re Sheffield,* 18 Cal.App.2d 177, 178 [63 P.2d 829] (assault with a deadly weapon); *People* v. *Williams,* 121 Cal.App. 552, 553-554 [9 P.2d 313] (manslaughter). See also *People* v. *Orrante, supra,* 201 Cal.App.2d 553, 561.)

Although this interpretation can be questioned, and its holding is contrary to the theories expressed by some criminal law experts,[2] we are not inclined to depart from it. The

---

[1]This confusion has several times been noted by the courts. In *People* v. *Orrante,* 201 Cal.App.2d 553, 565 [20 Cal.Rptr. 480], it is stated that the "confusing duplication" of language in the two paragraphs "has produced a crushing surplusage of argument in the briefs of the parties"; see also *People* v. *Alberts,* 197 Cal.App.2d 108, 110 [17 Cal.Rptr. 48]; *People* v. *Superior Court,* 199 Cal.App.2d 303, 309 [18 Cal.Rptr. 557]; Note 13 Stanford L.Rev. 340.

[2]The State Bar has long advocated that all restrictions in the granting of probation should be removed (see MacGregor, *Adult Probation, Parole and Pardon in California* (1959-60) 38 Tex.L.Rev. 887, 892; see also 32 State Bar J. 20, 21).

The Model Penal Code (Tent. Draft No. 4, § 6.02; Tent. Draft No. 2, § 6.02) recommends that trial courts, except where the death penalty or life imprisonment is involved, should have unlimited discretion to grant probation.

See also California Special Crime Study Commission on Criminal Law

existing interpretation is presumably well known to trial judges. Moreover, the Legislature has met several times since 1952, when the *Southack* case was decided, and although it has amended the section several times since then, it has not seen fit to change the basic rule there announced. We therefore reaffirm the rule that under the section the trial court is without power to grant probation in any felony case where a deadly weapon has been used. If there is to be any change in the section it should come from the Legislature.

This determination, however, does not settle the problem here involved for either of two reasons: First, the trial court found that the gun was not "used as a deadly weapon," and secondly, the trial court, before granting probation, determined that the crime was a misdemeanor. This determination presents the question of whether, under the 1957 amendment to section 1203 adding paragraph (2) to that section, paragraphs (3) and (4) have any application to misdemeanor cases.

First as to the finding. The gun involved, in the possession of defendant, inflicted five bullet wounds on the victim. Certainly, it would be absurd to contend that the gun was not a "deadly weapon" simply because the victim survived. But the question is still presented as to whether the gun was actually "used" as a deadly weapon. On this question the purpose and intent with which the gun was "used" may be relevant. In the *Southack* case, *supra*, 39 Cal.2d 578, the defendant was convicted of manslaughter after killing his ex-son-in-law with a shotgun. The trial court denied probation on the sole ground that it was barred from granting that privilege under section 1203, because a deadly weapon was used in the killing. This court agreed (at least in felony cases) that probation could not be granted under the language now in both paragraphs (3) and (4) to "any defendant ... who used ... or attempted to use a deadly weapon," but we reversed and remanded the case for a consideration of probation on the ground that there was sufficient evidence to

& Procedure, Final Report (June 30, 1949) p. 119, where the three majority members (two dissented) of that commission urged that all restrictions on the trial court's discretion to grant or to deny probation be removed; Special Study Commission on Correctional Facilities and Services, *Probation in California* (Dec. 1957) pp. 135-137, recognizing the need for greater use of probation in sentencing and urging a reexamination and liberalization of our present restrictions on the power to grant probation.

sustain a finding that the gun was discharged unintentionally and as a result of negligence. There was evidence that the gun had a "hair trigger," and was discharged accidentally when a third person bumped into defendant. This court held that "[t]he fact that the fatal wound was inflicted by a deadly weapon does not compel the conclusion, as a matter of law, that defendant was 'using' the weapon and was therefore ineligible for probation." (P. 591.) Thus, it was specifically held that it should not be inferred as a matter of law that the defendant was there "using" a deadly weapon, and therefore the court should not have concluded that defendant was ineligible for probation.

In the present case there is no evidence that the gun was accidentally discharged, but there is ample evidence that it was discharged unintentionally and without volition on the part of defendant. Defendant testified, without contradiction, that she did not aim the gun at the victim, but that the shooting occurred only when the victim removed his belt, hurled an insult at her, moved toward her threateningly, and began to struggle with her. She testified that she had no intent to use the gun or to injure the victim. The testimony was strongly corroborated by the testimony of three psychiatrists. Illustrative of their testimony is that of one psychiatrist who testified that: "[A]t the time of the shooting she [defendant] was extremely disturbed emotionally; that she had been for some time before that, but that it was at a climax during the period that she was in the motel; ... it's my opinion, rather, that at the time the shooting occurred she was extremely disturbed; she was highly excitable, and that due to unconscious neurotic factors she impulsively acted out and discharged the weapon.

"I don't feel she was consciously aware of what she was doing. I don't believe there was any intent to kill; in other words, any organized thoughts or plan formed toward the actual killing or shooting of the man she was with." In answer to the specific question "Doctor, do you believe that she entertained a specific intent to cause great bodily injury upon Mr. Alotis?" he answered, "No, I don't believe she did. I mean, consciously, I don't believe she did." The doctor then gave a lengthy opinion as to what motivated the crime, explaining defendant's unhappy background and the buildup of emotional tension to the breaking point on the night of the crime. He concluded: "And I think by this time she was so acutely disturbed that she unconsciously started shooting the gun."

Thus, while the evidence does not show that the gun was discharged as a result of negligent handling, as was the case in *Southack, supra*, 39 Cal.2d 578, there is ample evidence that there was an absence of the intent to kill—that is, that the shooting was involuntary and nonvolitional. The question is whether nonvolition can be equated with negligence—if so, under the rule announced in *Southack, supra*, section 1203 has no application, even if the offense were a felony. This in turn depends upon whether the language "used as a deadly weapon" excludes a nonvolitional act. Certainly, it can be argued that *Southack, supra*, stands for that proposition. Therefore, in this sense, the gun was not "used" as a deadly weapon, and section 1203 has no application.

But even if the word "used" includes a nonvolitional act, there is another reason why section 1203 permits the granting of probation in this case, and that is that by the express terms of paragraph (2), the prohibition against granting probation to any defendant who uses a deadly weapon contained in paragraphs (3) and (4) are not applicable to misdemeanors. Paragraph (2) of the section, added to it in 1957, provides: "In every misdemeanor case, the court may ... summarily deny probation or summarily grant probation." Here the trial court imposed a one-year county jail sentence, suspended it, and then granted probation. Thus the defendant has, under Penal Code section 17, been convicted of a misdemeanor "for all purposes after a judgment."[3]

Prior to this 1957 amendment to section 1203, the courts

---

[3]Penal Code section 17 provides, in part: "When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison."

Penal Code section 1203.1 gives the trial judge the alternative either of suspending the imposition of sentence or of imposing sentence and suspending the execution thereof. (See *People* v. *Banks*, 53 Cal.2d 370, 384 [1 Cal.Rptr. 669, 348 P.2d 102].) The latter course was followed here. Had the first alternative been followed then defendant would have been deemed convicted of a felony so long as sentencing was suspended. (*People* v. *Banks, supra*, at pp. 380-383.) But see Stats. 1963, ch. 919, p. 2169, adding to section 17, *supra*, the following language:

"Where a court grants probation to a defendant without imposition of sentence upon conviction of a crime punishable in the discretion of the court by imprisonment in the state prison or imprisonment in the county jail, the court may at the time of granting probation, or, on application of defendant or probation officer thereafter, declare the offense to be a misdemeanor."

had, without discussion of the point, apparently applied the restrictions found in paragraphs (3) and (4) to misdemeanors and felonies alike. (See *People* v. *Henderson, supra,* 151 Cal.App.2d 407.) It is also probably true that prior to the 1957 addition of paragraph (2) to section 1203, the courts had the very power seemingly conferred by that amendment.[4] But those provisions are somewhat ambiguous. The clear-cut amendment of 1957 referring to probation in misdemeanor cases is not ambiguous. It is specific and clear. It should not be ignored.

Even if the statute were ambiguous, which it is not, there are several rules of construction applicable to penal statutes that would compel the interpretation that in the field of misdemeanors paragraph (2) being specific must control the general provisions of paragraphs (3) and (4). ■ In *People* v. *Smith,* 44 Cal.2d 77, 79 [279 P.2d 33], it is stated:

" 'When language which is reasonably susceptible of two constructions is used in a penal law, ordinarily that construction which is more favorable to the offender will be adopted.' [Citations.] ■ The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. [Citations.]'' (See also *Schaefer* v. *Superior Court,* 113 Cal.App.2d 428, 437 [248 P.2d 450]; 45 Cal.Jur.2d, Statutes, § 160, pp. 662-663, and cases there cited.)

■ It is also the rule that probation should be denied only when a statute specifically prohibits it. As was said in *People* v. *Superior Court, supra,* 199 Cal.App.2d 303, at page 305, "Authority is vested in the court to grant probation except in those cases in which authority is specifically withheld.''

■ If these rules be applied to the interpretation of section 1203 it follows that because of paragraph (2), paragraphs (3) and (4) must be held to refer to felonies only, and that paragraph (2) specifically confers the power on trial courts to grant probation once they have determined that the offense is a misdemeanor whether or not a deadly weapon is used.

For these two reasons, the order of the trial court granting probation was well within its discretionary power, and should, therefore, be affirmed.

---

[4] See the first sentence of paragraph (1) of section 1203; see also section 1203b added in 1941 and amended in 1951 (Stats. 1951, ch. 502, p. 1655, § 1).

The order appealed from is affirmed.

Gibson, C. J., Traynor, J., Tobriner, J., and Peek, J., concurred. Schauer, J., and McComb, J., concurred in the judgment.

Appellant's petition for a rehearing was denied February 26, 1964.