[No. F006494. Fifth Dist. Mar. 25, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MOISES CAZARES, Defendant and Appellant.

834

[black redaction bar]

[black redaction bar]

COUNSEL

Charles M. Bonneau, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Shirley A. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

BALLANTYNE, J.—

### INTRODUCTION

Moises Cazares, his cousin Jose Corona, and two friends attended a dance in Clovis on August 31, 1985. Cazares was carrying a loaded .38 caliber revolver. As the dance was ending at midnight, the Cazares group and another group began fighting. A reserve officer broke up the fight. Unfortunately, it erupted again.

Cazares pulled out his revolver in the lobby of the dancehall and fired several rounds in the air to break up the fight. As defendant was firing the pistol he backed out of the door and from outside he fired at least two rounds through the closed door between the lobby and the hall. One of the bullets that went through the door struck Jose Corona in the head killing him. Cazares fled the scene but was quickly arrested by police. The gun was recovered. Six rounds had been fired.

The defendant pled guilty to one count of involuntary manslaughter pursuant to Penal Code section 192, subdivision (b), and admitted to the personal use of a firearm under Penal Code section 12022.5.

Cazares had no prior criminal or juvenile record. His family life was stable and he had a good-paying job as a baker's helper at the Basque French

Bakery. The defendant did not use drugs or regularly abuse alcohol at the time of the offense. He readily admitted his guilt at every stage of his detention, including his arrest.

Cazares loved his cousin and was genuinely remorseful for taking his life. Cazares told the probation officer that he was drunk at the time of the shooting. He stated that he never intended to shoot anyone. Defendant felt that he used the gun that evening because he had been drinking.

The defendant admitted to the probation officer that he knew the weapon was stolen when he purchased it. He was wearing the loaded gun in his rear waistband during the entire dance. As an additional factor in aggravation for the offense, the prosecution argued at sentencing that the defendant fired multiple shots.

The probation report recommended the midterm of three years for involuntary manslaughter and a two-year consecutive enhancement for using a firearm. Because the factors in aggravation were elements of the offenses, the probation officer orally modified his recommendation at sentencing to the mitigated base term of two years.

The trial court adopted the amended recommendation of the probation department. It sentenced Cazares to the mitigated term of two years with a two-year consecutive enhancement for firearm use. The trial court specifically found that defendant was not entitled to probation absent unusual circumstances and that the circumstances in the instant case were not unusual. Probation was denied.

The defendant appealed denial of probation on the ground that the trial court abused its discretion in failing to grant probation. Defendant argues that Penal Code section 1203, subdivision (e)(2), permits a trial court to grant probation even where a deadly weapon is used against a human being in unusual cases. Defendant contends that involuntary manslaughter has no "element of intent or malice," and since there is no moral turpitude present in involuntary manslaughter and the instant facts were unusual as a matter of law, the trial court was incorrect in concluding there were no unusual circumstances. We reject appellant's contentions as meritless and will affirm the judgment.

DISCUSSION

I.

UNUSUAL CASE.

■ The standard for reviewing a trial court's finding that a case may or may not be unusual is abuse of discretion. The reviewing court must find that the trial court acted arbitrarily or capriciously in exercising its discretion. (*People* v. *Edwards* (1976) 18 Cal.3d 796, 807 [135 Cal.Rptr. 411, 557 P.2d 995].) The burden rests on the defendant to clearly show that the sentencing decision was irrational or arbitrary. (*People* v. *Axtell* (1981) 118 Cal.App.3d 246, 259 [173 Cal.Rptr. 360].)

Where the trial court applies the incorrect standard in weighing a defendant's eligibility for probation, the case must be remanded with direction to the trial court to consider the merits of the defendant's application for probation. Where a sentencing court erroneously concludes that a case is not unusual as a matter of law, the case must be remanded. (See *People* v. *Hollis* (1959) 176 Cal.App.2d 92, 99 [1 Cal.Rptr. 293].)

■ The record unequivocally reflects the fact that the trial court considered the entire probation report and carefully exercised its discretion. Here, the trial court expressly found that the defendant's case was not unusual and that he was, for that reason, not entitled to probation. This is the only finding that is required under Penal Code section 1203. (See *People* v. *Nero* (1971) 19 Cal.App.3d 904, 913 [97 Cal.Rptr. 145].)

The point made by respondent that this case is only unusual in the consequences of defendant's unintentional killing is well taken. Defendant fired six rounds in a crowded dancehall. The very act of bringing an illegally purchased and loaded firearm to a crowded dancehall is reckless. Firing the weapon toward the ceiling was also reckless because of the opportunity for ricochet or even for an excited youth to be climbing on the roof. Firing a loaded gun through a door leading into a crowded dancehall is acting with a depraved heart and with reckless abandon.

Defendant's act of firing the weapon was intentional. The consequence of killing his cousin was not intended. ■ To prove criminal negligence, it is enough that the defendant have actual or implied knowledge that his act tends to endanger human life and that the conduct itself exhibits indifference toward the consequences of the act. (1 Witkin, Cal. Crimes (1985 supp.) Criminal Negligence, § 65, p. 87.)

It is not unusual to kill someone by firing a loaded weapon into an area populated by people. The mere intent to point a weapon at a victim, even where the actor believes the weapon to be unloaded or inoperable, justifies a charge of criminal negligence because the culpability is the act of pointing a potentially hazardous weapon at the victim. (*People* v. *Velez* (1983) 144 Cal.App.3d 558, 565-566 [192 Cal.Rptr. 686]; *People* v. *Ramirez* (1979) 91 Cal.App.3d 132, 139 [153 Cal.Rptr. 789]; 1 Witkin, Cal. Crimes (1985 supp.) Negligent Handling of Firearms, § 342, pp. 346-347.)

There was more than sufficient evidence before the trial court that defendant acted with reckless abandon when he fired his weapon. The very setting of the incident in a crowded dancehall could be used as an aggravating circumstance in sentencing the defendant. The trial court did not misperceive its duty under Penal Code section 1203, subdivision (e). Unlike the court in *Hollis,* the trial court here specifically considered defendant's plea that this was an unusual case and, through careful exercise of its judicial discretion, rejected it.

The only way to reverse the trial court's ruling would be for this court to rule, as a matter of law, that Penal Code section 1203, subdivision (e)(2), does not apply to involuntary manslaughter. For the reasons set forth below, we decline to do so.

## II.

### PENAL CODE SECTION 1203, SUBDIVISION (e)(2).

Penal Code section 1203 has gone through many revisions since it was first enacted in 1872. The section sets forth those circumstances in which probation may be considered as a sentencing option. The section is structured into subdivisions setting forth the procedures for trial courts to follow in exercising their discretion to grant or deny probation.

Some classes of offenders are denied the right to probation except in unusual circumstances. It was not until 1957 that the Legislature gave trial courts the discretion to even consider unusual cases. (See *People* v. *Hollis, supra,* 176 Cal.App.2d at p. 99.)

The initial amendment empowering judges to consider unusual cases carried with it the requirement that the district attorney concur with the trial judge that a case was actually unusual. This requirement was abrogated by judicial interpretation of this section and parallel sections in the Penal Code

and the Health and Safety Code. Courts reasoned that the Legislature had violated the doctrine of separation of powers and the independence of the judiciary in requiring the imprimatur of the district attorney before a court could find a case unusual. (See *People* v. *Tenorio* (1970) 3 Cal.3d 89, 91-95 [89 Cal.Rptr. 249, 473 P.2d 993]; *People* v. *Traylor* (1972) 23 Cal.App.3d 323, 335-336 [100 Cal.Rptr. 116].) In 1975, the Legislature finally removed the language requiring both judicial and district attorney concurrence that the case was unusual. (Sen. Bill No. 278 approved by Governor, Sept. 9, 1975, Sen. Final Hist. (1975-1976 Reg. Sess.) pp. 2354-2357.)

Subdivision (e) of section 1203 was also adopted in substantially its current form in 1975. (*Ibid.*) Subdivision (e) enumerates the exceptions for which probation must be denied absent unusual circumstances. The numbered paragraphs following subdivision (e) expressly list those crimes for which, or the classes of perpetrators for whom, probation is denied. Involuntary manslaughter is not listed as a crime excluded under any of the paragraphs.[1]

We preliminarily note that the crime of involuntary manslaughter only fits into the category of paragraph (2). All felonies in which a deadly weapon is used upon a human being have been held to be covered by paragraph (2) even though they are not enumerated in the other paragraphs following subdivision (e). (*People* v. *Alotis* (1964) 60 Cal.2d 698, 704 [36 Cal.Rptr. 443, 388 P.2d 675].) Involuntary manslaughter is a felony under Penal Code sections 192 and 193.

■■■ No case squarely confronts the issue of whether involuntary manslaughter is necessarily excluded from consideration for probation under section 1203, subdivision (e). Three cases, however, discuss the prejudicial effect of failing to instruct a jury as to the difference between voluntary and involuntary manslaughter and its effect on sentencing in the context of section 1203.

*People* v. *McManis* (1972) 26 Cal.App.3d 608, at page 615 [102 Cal.Rptr. 889], opines that parole may depend upon whether a loaded weapon was used with the intent to kill or simply without due caution. *People* v. *Escarcega*

---

[1]Additions without bearing upon this action have been made to the list of excluded crimes and criminals since 1975. Section 1203, subdivision (e)(2), currently reads as follows:

"(e) Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons:

". . . . . . . . . . . . . . . .

"(2) Any person who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he or she has been convicted."

(1969) 273 Cal.App.2d 853, at page 867 [78 Cal.Rptr. 785], and *People* v. *Alfreds* (1967) 251 Cal.App.2d 666, at page 671 [59 Cal.Rptr. 647], both state that conviction of voluntary manslaughter makes a defendant ineligible for probation except in unusual cases. The obvious implied inference from these statements is that a defendant convicted of *involuntary* manslaughter is eligible for probation even though a dangerous weapon is used against a human being.

There was evidence in *Escarcega* that the defendant had not even used the weapon that killed the victim. (273 Cal.App.2d at p. 857.) The *Alfreds* court found that the facts of that case would have supported a finding that the actual discharge of the gun was wholly accidental. (251 Cal.App.2d at p. 670.) The defendant in *McManis* also asserted that the gun discharged accidentally without the trigger being pulled, although this claim was rejected by the court. (26 Cal.App.3d at pp. 612-613.)

The key to understanding the implication in *Alfreds, Escarcega* and *McManis* that involuntary manslaughter entitles one to probation under paragraph (2) of subdivision (e) is the word "used." As early as 1952 the California Supreme Court ruled that the fact that a fatal wound was caused by a deadly weapon did not compel the conclusion that a defendant was *using* the weapon. If the weapon was simply being held without due caution, a defendant guilty of involuntary manslaughter could still be eligible for probation. In *People* v. *Southack* (1952) 39 Cal.2d 578, 591-592 [248 P.2d 12], the Supreme Court remanded a cause for determination by the trial court as to whether the weapon had been "used."[2]

Later, the Supreme Court reaffirmed the rule that under section 1203 the trial court is without power to grant probation where a deadly weapon is used in a felony. In *People* v. *Alotis, supra,* 60 Cal.2d 698, the high court upheld the trial court's probation order on two theories. First, there was "ample evidence that [the gun] was discharged unintentionally and without due volition on the part of the defendant." (60 Cal.2d at p. 706.) The trial court made that specific finding in its determination of whether to grant probation. (*Ibid.*) Thus, the gun was not "used." Second, the defendant was found guilty only of a misdemeanor and not of a felony. The *Alotis* court expressly held that section 1203 did not affect the judge's authority to grant probation in misdemeanor cases. (*Id.* at pp. 707-708.)

Here, defendant also argues that by judicial interpretation the prohibited

---

[2]Although subdivision (e) and paragraph (2) of subdivision (e) were designated differently in 1952, the text was materially the same as now.

use of weapon in section 1203, subdivision (e), is narrower than the prohibited use of a weapon in section 12022.5. The Supreme Court reasoned that section 1203 requires the use of a weapon upon a human being whereas section 12022.5 merely requires the use of a firearm in the commission of a felony or attempted felony. (*People* v. *Chambers* (1972) 7 Cal.3d 666, 673, fn. 6 [102 Cal.Rptr. 776, 498 P.2d 1024].) The *Chambers* decision, however, is instructive as to how the term "use" should be interpreted in *Southack* and *Alotis*. "There is nothing in *Southack* which supports a conclusion that pointing a gun at an intended victim or even displaying the gun in the commission or attempted commission of a crime may not constitute a proscribed use of the weapon. The court recognized that such acts were proscribed and merely remanded the cause for a determination of fact. Although the gun was on display, there was evidence from which it could have been found that the defendant's only intent was to protect himself should the victim attempt an unlawful entry of the defendant's home and that the *display itself did not necessarily constitute a use upon the victim.*

". . . . . . . . . . . . . . . . .

"*Southack* and *Alotis* hold that a negligent or involuntary act in discharging a firearm not otherwise being used on a human being does not constitute a use within the meaning of section 1203. This is not to say, however, that a negligent or involuntary discharge of a firearm being used to cause harm or fear of harm would excuse the unlawful use. We conclude that the meaning of the term 'use' as employed in sections 1203 and 12022.5 is consistent." (*People* v. *Chambers, supra,* 7 Cal.3d 666, 673-674, fn. omitted, italics added.)

*Chambers* appears to limit the broad implication in *Southack* and *Alotis* that "use" has any connection to the perpetrator's *specific* intent to commit a crime. *Chambers* finds that mere display of a weapon is not "use." It then states that *Southack* and *Alotis* hold that negligent or involuntary acts of discharging weapons do not fall within the meaning of section 1203 as long as the weapon is not "otherwise being used." To be considered for probation under section 1203, subdivision (e), without falling into the prohibition against probation in paragraph (2), the defendant must have first acted negligently or involuntarily, and second, he or she must not have been *using* a weapon. This is a two-pronged test.

Furthermore, *Chambers* goes on to hold that the meaning of "use" is consistent as it is employed in both section 1203 and section 12022.5. Where negligent or involuntary discharge of a weapon occurs while the weapon is being applied to cause harm or fear, this will not "excuse the unlawful use."

This is consistent with the finding in *Alotis* that the defendant was not acting volitionally. It is also consistent with the justification for proscribing classes of behavior as general intent crimes. ■ The specific intent to do harm is irrelevant as long as the criminal actor intended to do the act prohibited. (See *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Velez, supra,* 144 Cal.App.3d 558, 565-566.)

■ The prohibition against considering this defendant for probation under paragraph (2) of subdivision (e) does not apply if (1) he acted negligently or involuntarily, and (2) he was not *using* the gun. Assuming defendant's conduct to be negligent, there is no doubt from his own admissions that he was *using* his gun. Defendant's stated purpose in firing the weapon was to scare those attacking his companions. "After they pulled my cousin Jose back into the dance area I took out the pistol and shot 4 times, into what I thought was the cieling [*sic*], in order to scare everyone so that my cousin Jose, my friends and I could escape. When I shot I was still in the small room outside of the main dance area where Jose and my friends were being beaten and I could not see them inside because of the closed door between the two rooms. I was not shooting at anyone and only wanted to make noise to scare them."

Because defendant's purpose in firing the weapon was to scare others, he falls squarely within the harm or fear category of use identified in *Chambers.* This is precisely the category of use for which there is no excuse. In other words, the defendant cannot show as a matter of law that he was not using his weapon. Thus, he had the requisite legal volition to "use" the gun.

The defendant told the probation officer that he probably would not have fired the pistol if he had not been drinking. If defendant were drunk enough not to form the intent to fire the gun or the intent to cause fear by use of the gun, an issue would potentially exist as to whether the defendant was entitled to consideration for probation. The trial court did not specifically find that the defendant had the volition to "use" the revolver. It merely held that the instant action was not unusual. Following the *Southack* decision, this court could remand this case to the trial court for consideration of the degree of defendant's intoxication and whether that intoxication takes the defendant outside the ambit of subdivision (e)(2) of section 1203.

However, the defendant's own admissions to his probation officer, as set forth above, will not support such a remand order. The defendant had the ability to formulate a plan to extract his companions from the fight by firing his weapon. He was consciously aware that his friends were being attacked. He was aware of the act of pulling out his pistol and firing at least four rounds.

He was cognizant of where his companions were in relation to where he himself was located. His specific and formulated intent was to "make noise to scare them."

Unlike the unique facts of *Alotis,* this defendant had the volitional ability to formulate clear thoughts and to follow them in logical sequence with clear actions. His memory is not clouded. His story is not disjointed or ambiguous. This defendant was not legally too intoxicated to act intentionally. This defendant had the conscious intent to fire the weapon and, more specifically, to "use" it. Therefore, remanding this action to the trial court to make a finding as to whether the defendant used the revolver would serve no purpose.

## DECISION

The judgment is affirmed.

Best, Acting P. J., and Harris, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 2, 1987.

---

*Assigned by the Acting Chairperson of the Judicial Council.