Filed 11/16/21  P. v. Ortiz-Sanchez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERTO CARLOS ORTIZ-SANCHEZ,<br><br>    Defendant and Appellant. | C092916<br><br>(Super. Ct. No. 62-167217) |

This case arises from the death of Brandon Steinhoff, who perished as a result of an accidental, but criminally negligent, shooting at the hand of his friend, defendant Roberto Carlos Ortiz-Sanchez.

Defendant's appeal is limited to two alleged errors, both having to do with the trial court's decisions at the sentencing hearing.  At that hearing, the court denied defendant's request for probation and sentenced him to the upper term of four years in prison. Defendant contends the trial court abused its discretion by (1) misapplying Penal Code section 1203, subdivision (e)(2)[1] to find him presumptively ineligible for probation; and

---

[1]     Undesignated statutory references are to the Penal Code.

1

(2) using his "lack of candor" to impose an upper term without finding the elements of perjury were satisfied. Recognizing his attorney may have forfeited these claims by failing to object in the trial court, defendant claims he received ineffective assistance of counsel. Given the unique circumstances of this case, we have determined that remand for resentencing is necessary to allow the trial court to determine, in accordance with section 1203, subdivision (e)(2), whether defendant "used" a gun within the meaning of that section. Given this determination, we find it unnecessary to address defendant's second argument.[2]

## BACKGROUND

### A.    *Pretrial proceedings*

The People's complaint charged defendant with a single count of involuntary manslaughter (§ 192, subd. (b)). The People later moved to amend the complaint to allege that if defendant were found guilty of involuntary manslaughter, it would be considered a serious felony (§ 1192.7, subd. (c)(23)), a violent felony (§ 667.5, subd. (c)(8)), that defendant would be presumptively ineligible for probation (§ 1203, subd. (e)(2)), and for a local prison commitment (§ 1170, subds. (f), (h)(3)). Defendant opposed the motion, arguing the "intentional use" required for conduct falling under section 1192.7, subdivision (c)(23)[3] would be inconsistent with the charge of involuntary

---

[2]    We nonetheless note that should the trial court determine that defendant used a gun within the meaning of section 1203, subdivision (e)(2), and elects to reimpose the upper term of four years, the court also should clarify whether its lack of candor determination included a finding that defendant actually committed perjury or was based on his refusal to accept responsibility for his actions. (See *People v. Howard* (1993) 17 Cal.App.4th 999, 1003-1005 [federal Constitution requires a court using defendant's untruthful testimony to aggravate a sentence to make findings "encompassing all the elements of a perjury violation"].)

[3]    Similar to section 1203, subdivision (e)(2), this provision defines "serious felony" as "any felony in which the defendant personally used a dangerous or deadly weapon." (§ 1192.7, subd. (c)(23).)

manslaughter, and that a section 667.5, subdivision (c)(8) enhancement did not apply to involuntary manslaughter. At the hearing, the court noted these allegations were merely to provide *notice* and would be subject to argument at sentencing. Ultimately, the court allowed the People to amend the complaint to add all but the violent felony allegation.

Defendant was held to answer following the preliminary hearing, and the court denied defendant's oral request that the court make a factual finding that defendant's conduct did not fall within the section 1192.7, subdivision (c)(23) allegation, noting there was evidence presented that would contradict defendant's version of events that the gun had gone off immediately after the victim handed it to him. Specifically, the court highlighted testimony that defendant said, " 'Hey, Brandon' " before the shot was fired, that the victim was five to six feet away, and that the bullet entered the back of the victim's neck.

The People then filed an information, again charging defendant with involuntary manslaughter, including allegations that the offense was a serious felony (§ 1192.7, subd. (c)(23)), that defendant was ineligible for a local prison commitment (§ 1170, subd. (f), (h)(3)), and that he was presumptively ineligible for probation (§ 1203, subd. (e)(2)).

In response, defendant filed a section 995 motion challenging whether, by virtue of a section 192, subdivision (b) conviction, he could be said to have "used" a firearm for purposes of the section 1192.7, subdivision (c)(23) allegation. Specifically, he reasoned there would have to be separate evidence of an "intent to fire" the gun, which was inconsistent with the evidence from the preliminary hearing. Either the victim handed him the gun and it accidentally fired, or his manipulation of the slide caused the gun to misfire. Neither factual scenario, he argued, supported an intent to fire. The People opposed this motion, questioning whether this argument was even viable at this procedural juncture and arguing that defendant had intentionally done all acts leading up to the discharge of the gun, including manipulating the gun and the slide. Defendant's reply emphasized that it would not be enough "that the Defendant held a firearm, that he

3

manipulated it in some manner or for some time, or even that he had it pointed in the direction of Brandon. All of these facts may support the argument that the defendant was negligent, but not that he *intended to fire the gun*, as is required for this allegation. There was zero evidence presented of any intended dry fire or possible malice behind these tragic events." Ultimately, the court denied defendant's motion without deciding whether it was procedurally appropriate at that juncture and also allowed the People to amend the information to add a great bodily injury allegation. (§ 1192.7, subd. (c)(8).)

B. *The trial*

At trial, the People presented evidence that defendant and the victim were friends. On the day in question, defendant picked up the victim, the victim's girlfriend, A.R., and A.R.'s nine-month old baby for a get together at a house defendant shared with his then fiancée,[4] T.B., their 20-month-old child, and T.B.'s family. The families intended to enjoy the pool and the men would clean their guns.

Once they got to the house, the victim removed his .40-caliber SIG Sauer semiautomatic pistol (SIG Sauer) from the waistband of his pants and handed it to defendant. Defendant pulled back the slide and discovered the gun was loaded. Upset, he asked the victim why he had brought a loaded gun to his house. The victim responded that he always carried a loaded gun, adding that defendant was lucky the gun had not misfired when he pulled the slide because sometimes that happened.[5]

Defendant and the victim then proceeded to discuss, clean, and admire their guns at a table by the pool while the others swam. The SIG Sauer was passed between them, and at one point, defendant pretended to shoot the victim with that gun. In response, the

---

[4] By the time of trial, defendant and T.B. were no longer engaged.

[5] Defendant's testimony confirmed this exchange, including that sometimes a bullet would get stuck in the slide and the gun would misfire.

victim pretended to be shot. The victim's girlfriend did not think that defendant had actually pulled the trigger when he pretended to shoot the victim.[6]

Defendant and the victim drank beer and liquor over the course of the afternoon. Defendant also smoked marijuana. Witnesses described defendant as "very intoxicated" and "drunk." He was slurring his words and stumbling with poor coordination.[7]

The victim's girlfriend went into the house to use the bathroom, leaving her baby sleeping in a car seat with T.B.[8] Defendant, the victim, and T.B. sat at the poolside table. T.B. used her phone to order a pizza. Thereafter, according to T.B., defendant and the victim stood up, talking. The victim was "pretty far" from defendant when defendant picked up the SIG Sauer, took out the magazine, and struggled to manipulate the slide. Defendant said, "Hey, Brandon," and managed to pull the slide back. When he did, a bullet ejected from the side of the gun and another bullet fired, hitting the victim in the back of the neck.[9] Defendant exclaimed, "Dude, I'm so sorry. Why was your gun loaded? I didn't know it was loaded." T.B. immediately called 911 and the parties

---

[6] T.B. had observed defendant and the victim unloading their guns and pretending to shoot each other, including the pulling of the trigger, on at least two previous occasions. She did not recall whether they had engaged in such behavior on the day of the shooting.

[7] It was estimated that at the time of the shooting, defendant had a blood-alcohol content of approximately 0.135 percent. Defendant testified, however, that they only started drinking and smoking marijuana after the guns had been put away.

[8] The victim's girlfriend was in the bathroom when she heard a loud noise, and thus, she did not witness the shooting.

[9] According to the People's firearms expert, who had attempted unsuccessfully to cause the SIG Sauer to misfire, the gun would not have fired unless the trigger was pulled. Four pounds of force would be required to pull the trigger in single-action mode, which was lighter than a Glock, but it was not a "hair trigger." Finally, the expert said that because the SIG Sauer did not have a safety, the only way to render it safe would be to remove the magazine and "rack the slide back to clear the chamber."

attempted to help the victim, but he died from the gunshot wound. T.B. believed the shooting was an accident.

When asked whether he had shot the victim, defendant told responding officers, "He handed me the gun and it went off." The People also played a video of defendant's interview back at the police station, which was admitted as People's exhibit 37. A transcript of that video reflects that defendant maintained the victim had handed him the gun and it fired. He did not know the gun was loaded, and did not know whether his finger was near the trigger guard or trigger. Defendant denied dry firing the gun.

At trial, defendant explained the victim had been pushing him to trade his motorcycle for the SIG Sauer and to allow the victim to "test drive" the motorcycle. Defendant refused, and the victim picked up his gun by the barrel and quickly thrust it towards defendant, who grabbed the gun, and the gun went off. On cross-examination, defendant conceded for the first time that he had accidentally pulled the trigger as he "reached and grabbed for the gun." Nonetheless, defendant maintained the victim handed him the gun with the muzzle pointing towards the victim, defendant grabbed the gun, accidentally pulling the trigger, not knowing that the gun was loaded, and the gun went off during the exchange.

The 911 dispatcher requested the gun be rendered safe, so defendant removed the magazine and pulled back the slide, ejecting a round. Defendant acknowledged being told to treat every gun as if it was loaded and that he should not mix guns and alcohol "because alcohol can impair your judgment."

The same day the jury received the case, they found defendant guilty as charged.

6

C.    *Sentencing*

Despite the extensive pretrial litigation regarding whether defendant had "used" a gun for purposes of the sentencing allegations,[10] defendant's trial counsel inexplicably failed to file a presentencing brief addressing that issue and did not respond to the People's sentencing brief that argued against probation by evaluating the general probation criteria.[11]  (Cal. Rules of Court, rule 4.414.)  Nor did defense counsel address defendant's suitability for probation at the sentencing hearing.  Rather, counsel merely asked the trial court to impose the middle term, while the People asked the court to follow the probation department's recommendation to deny probation and impose the upper term.[12]

Accordingly, even though there were multiple pretrial hearings regarding the weapon use sentencing allegations, neither party briefed nor expressly addressed these provisions at sentencing.  In fact, no one asked the court to make a determination as to whether defendant had "used" the gun as contemplated in sections 1203 and 1192.7.

It is in this context that the court first analyzed whether it would grant defendant probation, noting the terrible loss to the victim's family, defendant's previous status as a productive member of society, that the crime occurred during an otherwise happy event, and that the happiness was interrupted by the ill-fated mixing of alcohol, marijuana, and

---

[10]    We acknowledge this litigation primarily revolved around the section 1192.7, subdivision (c)(23) allegation, but highlight that section 1203, subdivision (e)(2) requires a substantially similar determination.  (Compare § 1192.7, subd. (c)(23) [personal use of a "dangerous or deadly weapon"] with § 1203, subd. (e)(2) [proscribing use or attempted use of a "deadly weapon"].)

[11]    We note that defendant had two different attorneys in the trial court; his first lawyer filed the unsuccessful section 995 motion, the second defended him at trial.

[12]    This recommendation included a statement, without any analysis, that defendant was presumptively ineligible for probation under section 1203, subdivision (e)(2).

firearms. The court noted defendant's familiarity with firearms and that he should have known the dangers of mixing them with alcohol and marijuana while children were present.

The court went on, "And one of the things that I considered in this case, and when I listened to the testimony I wanted to clarify it, is I felt that [defendant's] explanation didn't ring true to me. I felt he was mitigating his use of alcohol, whether he was under the influence. I felt like he was mitigating that he put his guns away and kind of making it seem like he was acting reasonable, when there was evidence that really there was more than that. I think the evidence, in my view, tends to support the conclusion that he did have the handgun, that he did manipulate it in some way and it went off. [¶] I think it supports the conclusion he didn't fire it intentionally at his friend, no one was making that argument. But I think it supports the conclusion that he was manipulating the gun while intoxicated, and it was pointed in the direction of Brandon when it happened."

Finally, the court noted that defendant's prior criminal history included a hit and run that indicated a past problem with alcohol. The court concluded, "The seriousness of the case, the fact that a firearm was used in such a criminally negligent way that results in death, I feel, is not an appropriate case for probation. I don't feel there is any unusual circumstances. Accordingly, the Court is going to deny probation."

The court then moved on to analyze defendant's prison sentence, noting in mitigation that defendant was a productive member of society and had a minor criminal history. In aggravation, the court noted, "Aggravating, although I recognize that criminal negligence in and of itself requires conduct of a criminal negligent standard, so it already infers there is some great degree of inattentiveness going on and recklessness. But this introduction of alcohol, his experience with firearms, his knowledge of how dangerous they would be, the presence of the children. And lastly, I feel an aggravating factor that kind of tilted me towards the upper term was I didn't feel he was being candid in his testimony. And that is a factor the Court can consider. [¶] So when I balance the

mitigating factors versus aggravating factors, after reviewing the Rule of Court, I concluded that the probation analysis was correct. [¶] Accordingly, the Court will impose the upper term of four years."

The court also imposed fines, fees, and victim restitution as authorized by law. Defendant timely appealed.

DISCUSSION

Defendant argues the trial court misunderstood the scope of its sentencing discretion under section 1203, subdivision (e)(2) when it found he was presumptively ineligible for probation, thus requiring remand for resentencing. Having failed to object at the sentencing hearing, defendant alternatively argues his counsel was ineffective for failing to make this argument. As outlined in detail above, while the pretrial proceedings show the parties repeatedly litigating whether defendant could be found to have "used" a gun for purposes of the sentencing hearing, when it came time to have that hearing, neither party addressed that issue with the court, nor asked the court to make the findings required for presumptive ineligibility to apply. This omission is unfortunate, and in light of defendant's alternative ineffective assistance of counsel claim, we exercise our discretion to review this claim on the merits. (*People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6.)

All defendants are eligible for probation, in the discretion of the sentencing court, unless a statute provides otherwise. (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) Some statutes bar probation absolutely, while others provide that a defendant is ineligible except in unusual cases where the interests of justice would be served. (*Ibid.*) The trial court's decision on whether a defendant should be granted probation is reviewed for an abuse of discretion. (*People v. Nuno* (2018) 26 Cal.App.5th 43, 49 (*Nuno*).) Thus, a defendant seeking to challenge the trial court's denial of a grant of probation must establish that denial "was, under the circumstances, arbitrary, capricious, or exceeding the bounds of reason." (*Ibid.*)

9

Ordinarily, this is a heavy burden to bear. However, " 'all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' (*People v. Russel* (1968) 69 Cal.2d 187, 195.) Where a court 'bases its determination to deny probation in significant part upon an erroneous impression of the defendant's legal status, fundamental fairness requires that the defendant be afforded a new hearing and "an informed, intelligent and just decision" on the basis of the facts.' (*People v. Ruiz* (1975) 14 Cal.3d 163, 168.)" (*Nuno, supra*, 26 Cal.App.5th at pp. 49-50, italics omitted.) We review legal questions associated with whether the trial court properly applied presumptive ineligibility de novo. (*Id.* at p. 50 [considering whether a defendant who fled from a hit and run causing injury *used* a deadly weapon under section 1203, subdivision (e)(2)]; see also *id.* at p. 50 [citing *People v. Manriquez* (1991) 235 Cal.App.3d 1614, 1616-1620 [considering de novo whether presumptive ineligibility required *personal* carrying of a deadly weapon]; *People v. Alvarez* (2002) 95 Cal.App.4th 403, 408 [considering de novo whether presumptive ineligibility required personal *use* of a deadly weapon]].) Only if the court correctly applied the presumption do we evaluate whether the court abused its discretion in making its determination. (*Nuno*, at p. 50.)

Here, it appears the trial court may have determined defendant's *manipulation* of the gun equated to *use* under section 1203, subdivision (e)(2). The court stated, "I think the evidence, in my view, tends to support the conclusion that he did have the handgun, that he did *manipulate* it in some way and it went off. [¶] I think it supports the conclusion he didn't fire it intentionally at his friend, no one was making that argument. But I think it supports the conclusion that he was *manipulating* the gun while intoxicated, and it was pointed in the direction of Brandon when it happened." (Italics added.) The court then refused to grant defendant probation, stating, "The seriousness of the case, the fact that a firearm was used in such a criminally negligent way that results in death, I feel, is not an appropriate case for probation. I don't feel there is any unusual circumstances.

10

Accordingly, the Court is going to deny probation." This suggests the court was applying the presumption against probation. (See § 1203, subd. (e)(2); Cal. Rules of Court, rule 4.414.) However, the court's implied ruling that *manipulation* equated to *use* is insufficient to show the statute applies.

Section 1203, subdivision (e) provides: "Except in unusual cases in which the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons: [¶] . . . [¶] (2) Any person who used, or attempted to use, a deadly weapon upon a human being in connection with the perpetration of the crime of which that person has been convicted."

A conviction for involuntary manslaughter, standing alone, is insufficient to establish that a defendant *used* a firearm under section 1203, subdivision (e)(2), even if the victim died from a gunshot. (*People v. Southack* (1952) 39 Cal.2d 578, 591 [defendant convicted of manslaughter did not " 'use the gun' " if he "merely held it without due caution"].) The Supreme Court has held that a "negligent or involuntary act in discharging a firearm not otherwise being used on a human being does not constitute a use within the meaning of section 1203. This is not to say, however, that a negligent or involuntary discharge of a firearm being used to cause harm or fear of harm would excuse the unlawful use. We conclude that the meaning of the term 'use' as employed in sections 1203 and 12022.5 is consistent." (*People v. Chambers* (1972) 7 Cal.3d 666, 674; see also *People v. Alotis* (1964) 60 Cal.2d 698, 707 ["involuntary and nonvolitional act" of shooting while physically struggling with victim may not equate to "use" for purposes of section 1203, subdivision (e)(2)]; *People v. Cazares* (1987) 190 Cal.App.3d 833, 840-842 [defendant firing gun into air to scare individuals attacking his companions had "used" gun within the meaning of *Chambers*].)

That mere negligence in the *handling* of a gun should not implicate section 1203, subdivision (e)(2) is consistent with the definition of "use" found in that section's sister statute. Section 1203.06, which prohibits probation for certain enumerated crimes if a

11

perpetrator used a firearm (§ 1203.06, subd. (a)(1)), defines " 'used a firearm' " as "to display a firearm in a menacing manner, to intentionally fire it, to intentionally strike or hit a human being with it, or to use it in any manner that qualifies under Section 12022.5." (§ 1203.06, subd. (b)(2).) Thus, mere manipulation of the gun does not necessarily equate to use for purposes of section 1203, subdivision (e)(2).

Here, neither the jury nor the court explicitly found that defendant personally used a deadly weapon, nor was such a finding implicit. Rather, the trial court found defendant "manipulated" the gun while it was pointed in the direction of the victim, and it went off. These findings stop short of those required, and thus require remand for resentencing to allow the trial court to complete the necessary inquiry. (See, e.g., *People v. Southack, supra*, 39 Cal.2d at pp. 591-592 [where defendant was convicted of manslaughter on facts supporting either a voluntary or involuntary theory, remand for a determination whether defendant held the gun "without due caution" or *used* the gun against the victim was required]; *People v. Ruiz* (1975) 14 Cal.3d 163, 168 [remand required where trial court erroneously believed defendant was presumptively ineligible for probation]; *People v. Alvarez, supra*, 95 Cal.App.4th at pp. 408-409 [same].)

Under the facts of this case, it appears the only way defendant could be said to have "used" the gun would be if the trial court were to conclude that defendant intentionally pulled the trigger, assuming the gun was still unloaded. There was no direct evidence that defendant dry-fired the gun resulting in the victim's death. On the contrary, defendant testified to accidentally depressing the trigger when receiving what he thought was an unloaded gun from the victim, and T.B. testified defendant was manipulating the slide when the gun went off. Thus, there is no direct evidence that defendant intentionally pulled the trigger before the firing of the fatal shot. (See *People v. Alotis, supra*, 60 Cal.2d at p. 707 ["there is ample evidence that there was an absence of the intent to kill—that is, that the shooting was involuntary and nonvolitional. . . . Therefore,

12

in this sense, the gun was not 'used' as a deadly weapon, and section 1203 has no application"].)

Nonetheless, we acknowledge there was testimony that defendant "fake shot" the victim and the victim "fake died" at least once in the hours preceding the ill-fated accidental shooting that resulted in the victim's death, as well as on two prior occasions. Under these circumstances, we find it appropriate to vacate the sentence and remand the matter to allow the trial court to determine, in the first instance, whether defendant *used* the gun within the meaning of section 1203 and case law interpreting that statute.

## DISPOSITION

The sentence is vacated and the matter is remanded for resentencing to allow the trial court to determine, in accordance with the views expressed herein, whether defendant used the gun within the meaning of section 1203, subdivision (e)(2). If the court finds defendant is still presumptively ineligible for probation and that the presumption has not been overcome and reimposes a prison term, the parties may ask the trial court to clarify its application of the factors in aggravation at that time.


       KRAUSE       , J.



We concur:



       MURRAY       , Acting P. J.



       HOCH       , J.