Filed 12/18/15  P. v. Alvarez CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE REYES ALVAREZ,<br><br>    Defendant and Appellant. | H041836<br>(Monterey County<br>Super. Ct. No. SS141900A) |

Defendant Jose Reyes Alvarez pleaded nolo contendere to two felony counts of unlawful sexual intercourse with a minor (Pen. Code, § 261.5, subd. (c))[1] and one misdemeanor count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)).  Before defendant entered his plea, the trial court indicated that it was inclined to exercise its discretion to reduce the two felony charges under section 261.5, subdivision (c) to misdemeanors if the victim's family had no objections.  At the sentencing hearing, the court declined to reduce the felonies to misdemeanors, denied defendant's request for a continuance to prepare a motion to withdraw his plea, and denied his request to withdraw his plea.

On appeal, defendant challenges the validity of his plea agreement and argues the court abused its discretion when it did not reduce the felonies to misdemeanors.  We conclude that the court did not abuse its discretion when it declined to reduce his felonies to misdemeanors under section 17, subdivision (b).  However, we find that the court

---

[1] Unspecified statutory references are to the Penal Code.

abused its discretion when it denied his motion to withdraw his plea, and we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2014, the Monterey County District Attorney's Office filed an information charging defendant with five felony counts of unlawful sexual intercourse with a minor (§ 261.5, subd. (c)) and one misdemeanor count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)).

The circumstances of the offense are as follows.[2] Defendant resided with his mother, sister, and girlfriend (victim). On July 19, 2014, defendant's sister said that she got into a fight with defendant. At one point, defendant hit her in the face with an open palm then pushed her at least five times, hitting her in the left eye with his right hand. Defendant then pushed his sister on the bed, got on top of her, and grabbed her around the throat. She told him to stop, and he eventually left the room.

Eventually, the police were contacted. Victim, who was 16 years old at the time, was interviewed about the incident. She was also asked about her relationship with defendant, who was then 19 years old. Victim said that she had a sexual relationship with defendant and had consensual sex with defendant approximately five times while in California and another five times while they were on a trip to Utah. Victim's mother (mother) was interviewed, and mother asserted that she knew defendant was dating her daughter and that she had given them permission to date. However, mother said that she did not give defendant permission to take her daughter out of state. Mother said that she suspected that defendant and her daughter were in a sexual relationship.

On November 12, 2014, defendant pleaded no contest to two felony counts of unlawful sexual intercourse with a minor (§ 261.5, subd. (c)), which are "wobbler"

---

[2] Since defendant pleaded no contest to the charges, we take the facts from the probation officer's report.

offenses, and one misdemeanor count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). Defendant was advised that he could be subject to a maximum sentence of three years eight months in county jail.

During the change of plea hearing, counsel and the court discussed the court's inclination to reduce the two felonies to misdemeanors. Defense counsel stated: "My client understands that the Court's inclination was to grant the misdemeanor. I did meet with the family on Tuesday. Nothing in the discussion that I had with the [victim's] family appeared to be contrary to the spirit of our negotiations. I've related to my client, I've discussed the case with him, he's prepared to go forward with the plea. [¶] If the motion, for some reason, is not granted, it's my understanding that he would get felony probation, although I've indicated to him, and he heard the Court indicate, that that's unlikely unless something happens between now and sentencing. And I've certainly advised him on that."

Thereafter, the trial court confirmed its inclination, stating: "The understanding is that you would not be committed. You could receive a misdemeanor treatment. The Court's indicated a leaning in that discretion [*sic*]."

Subsequently, the court found that defendant understood his constitutional rights and the consequences of his plea. The court also found that the plea was entered freely, voluntarily, and intelligently.

During the sentencing hearing on December 17, 2014, defendant's trial counsel moved to reduce the two felony convictions for unlawful sexual intercourse with a minor to misdemeanors under section 17, subdivision (b). The court entertained argument from the parties.

Afterwards, the court denied defendant's request to have his felonies reduced to misdemeanors. When explaining its decision, the court made the following comments:

3

"I do note, on page 7, a quote from [defendant] where it says, 'A felony is going to follow me everywhere. People are talking about me. I thought I was doing everything the right way. I really cared a lot about [victim],' in the past sense.

"The other thing that stands out, I suppose, in this case that—the report's really confusing. You know, I actually sat down and started putting down 'mom' and 'aunt' and 'sister' and 'brother' and, you know, so I—I went through the whole thing and redid that. And—and I think it's—it reflects this sort of environment of unsettled relationships.

"And, you know, you say that there was some imparting of the information about this other child. I sure don't have any note on anything, anywhere, reflecting that I was informed ever of him having—how old is she, the mother of your child? [¶] . . . [¶] So it's like that to me was the biggest surprise [defendant's child with another woman]. It was one of the biggest facts in the case, and I don't have a note of it. I just don't.

"It's—I still feel the same way about the case, at least from the perspective of there's a relationship going on between him and her, she's sixteen, he's nineteen or twenty. The parents have made really—they've been accommodating. That's the word I used in that note. [¶] And I still have all of that, the sense of it is still there, and it still has the same value in terms of defining the value of the case, but this other relationship with a child is just different. It just makes it different. It's like, I can just keep doing that. I can keep dating sixteen year-old girls. [¶] I'm sure that he felt strongly about the mother of his child too, just as he did feel strongly, according to him, for [victim]."

After the court made its decision, defense counsel requested that the court give defendant the opportunity to withdraw his plea, or at the least give defense counsel a continuance to brief the issue and file a motion. Defense counsel asserted that defendant had entered his plea after being told that the court was "strongly leaning in favor" of reducing the felonies to misdemeanors. Defense counsel explained that "[t]he biggest concern, at least at that time, was the position of the victim's family members. If the

4

victim's family members were not opposed to, were not asking for a felony, the Court was very strongly leaning in favor of granting it." Defense counsel asserted that he had conferred with victim's family members and found that they were not strongly opposed to reducing the felonies. The trial court denied defendant's request to withdraw his plea and denied the request for a continuance to brief the issue.

The court then placed defendant on three years' felony probation and suspended imposition of sentence. The remaining counts against defendant were dismissed.

The trial court granted defendant's request for a certificate of probable cause, and defendant appealed.

## DISCUSSION

1. *Trial Court's Discretion under Section 17, subdivision (b)*

First, defendant argues the trial court abused its discretion when it denied his motion to reduce his felonies to misdemeanors under section 17, subdivision (b). He claims the trial court relied on an inappropriate factor—his prior relationship with a minor girl when he was also a minor—when it made its sentencing decision.

### a. **Overview and Standard of Review**

Section 17, subdivision (b) gives the court discretion to reduce "wobbler" offenses (crimes that can be sentenced either as a felony or a misdemeanor). "[S]ection 17[, subdivision] (b), read in conjunction with the relevant charging statute, rests the decision whether to reduce a wobbler solely 'in the discretion of the court.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 (*Alvarez*).)

The trial court is entitled to consider multiple factors when determining whether to exercise its discretion under section 17, subdivision (b). "[S]ince all discretionary authority is contextual, those factors that direct similar sentencing decisions are relevant, including 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and

5

demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, [former] rule 410 [now rule 4.410]. The corollary is that even under the broad authority conferred by section 17[, subdivision] (b), a determination made outside the perimeters drawn by individualized consideration of the offense, the offender, and the public interest 'exceeds the bounds of reason.' " (*Alvarez*, *supra*, 14 Cal.4th at p. 978, fn. omitted.)

We review the court's decision to deny the section 17, subdivision (b) motion for an abuse of discretion. The burden is on the party attacking the sentence to show that the sentencing decision was irrational or arbitrary. In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives. (*Alvarez*, *supra*, 14 Cal.4th at p. 978.) Under the standard of review of abuse of discretion, the trial court's decision under section 17, subdivision (b) will not be reversed on appeal simply because reasonable people might disagree. (*Alvarez*, *supra*, at p. 978.)

b. **Analysis**

Defendant insists the trial court abused its discretion when it denied his section 17, subdivision (b) motion, because it based its denial on defendant's prior relationship with a 16-year-old girl, the mother of his child. Defendant claims reliance on this fact was inappropriate, because he was also 16 years old at the time of the prior relationship. Therefore, he argues that the trial court's characterization of this prior relationship as indicative of a history of repeated sexual contact with minors was erroneous. We disagree, and conclude that defendant has failed to show the trial court abused its discretion.

In coming to this conclusion, we note that defendant's argument does have some merit. A reasonable person may agree that the fact that defendant fathered a child with a 16-year-old girl when he was also 16 years old is not necessarily representative of a trend of illicit relationships. After all, the prior relationship was markedly different.

6

Defendant was also a minor at the time. Further, defendant's probation report indicates that he does not have a juvenile criminal history, which means that he likely did not have prior warning that having sexual intercourse with a minor constitutes unlawful conduct.

However, a reasonable person may also agree with the trial court's conclusion that defendant's relationship history bore on his propensity to commit similar offenses in the future. The record reflects that the court believed that defendant's history of sexual relationships stemming from when he was a minor meant that he may have the mindset of "I can just keep doing that. I can keep dating sixteen year-old girls."

Additionally, defendant's prior relationship does not appear to be the only factor the court considered. The court also appeared concerned with defendant's understanding of the severity of the actions. When explaining its decision during the sentencing hearing, the court pointed out that defendant had previously stated that he " 'thought [he] was doing everything the right way [with victim]' " and that he " 'cared a lot about [victim],' in the past tense." The court further remarked defendant must have "felt strongly about the mother of his child too, just as he did feel strongly, according to him, for [victim]." A defendant's appreciation of and attitude toward the current offense, as well as his traits of character, are appropriate factors for the court to consider when making its sentencing decision. (*Alvarez*, *supra*, 14 Cal.4th at p. 978.)

In sum, we have a situation where reasonable people may disagree on whether the trial court acted to achieve legitimate sentencing objectives when it declined to reduce the felony offenses to misdemeanors. However, we are reminded that "[t]rial courts have broad authority in ruling on motions under section 17 to reduce a crime to a misdemeanor." (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1457.) Further, " '[a] decision will not be reversed merely because reasonable people might disagree.' " (*Alvarez*, *supra*, 14 Cal.4th at p. 978.) We are not authorized nor warranted to substitute our judgment for the judgment of the trial court. Additionally, defendant's claim that

7

there were several factors supporting a reduction of the felony offenses to misdemeanors is akin to an argument that we should reweigh the evidence, which we do not do on appeal.

Defendant fails to meet the high burden of demonstrating that the trial court's ruling exceeded the bounds of reason. Accordingly, we find no abuse of discretion.

2. *Failure to Grant Defendant's Motion to Withdraw the Plea*

After the court declined to reduce his felonies to misdemeanors, defendant moved to withdraw his plea. He now argues that the court erred when it denied his motion.

a. **Overview and Standard of Review**

"A defendant may move the trial court to set aside a guilty plea for good cause at any time before the entry of judgment. (Pen. Code, § 1018 . . .) 'Good cause' means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence. [Citation.] The grant or denial of such a withdrawal motion is 'within the sound discretion of the trial court and must be upheld unless an abuse thereof is clearly demonstrated.' " (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.)

A defendant is entitled to withdraw his or her plea if the plea was induced by undisclosed or unkept promises from public officials, including the court. (*People v. West* (1970) 3 Cal.3d 595, 610; *People v. Wadkins* (1965) 63 Cal.2d 110, 113-114.)

b. **Analysis**

Defendant argues that the trial court erred in denying his motion to withdraw his plea, because good cause existed for the withdrawal. Defendant claims that he pleaded guilty because the trial court led him to believe that it would reduce the felony convictions to misdemeanors, absent an objection by the victim's family. Therefore, when the trial court declined to reduce the felonies for an entirely different reason, he should have been permitted to withdraw his plea.

8

Defendant relies on *People v. Spears* (1984) 153 Cal.App.3d 79 (*Spears*).  In *Spears*, the court had indicated to the defendants during the plea negotiations that there was a "good likelihood" that they would be placed on probation when sentenced.  (*Id*. at p. 83.)  Further, the climate of the plea bargain was "one of real anticipation on the part of the defendants and counsel, if not the court, that probation was likely."  (*Id*. at p. 84.)  However, the defendants eventually pleaded to charges that would make "probation legally possible, but statutorily disfavored and therefore less than probable."  (*Id*. at p. 87.)

The *Spears* court noted that the defendants had been advised of the maximum sentence they could face.  However, the trial court had also made references to probation without giving "the slightest hint that there were statutory hurdles not faced by the other defendants, or to criminal defendants in general.  Thus, because probation was statutorily disfavored, the advice was misleading to the extent that the defendants had been permitted by the court to believe that probation was likely."  (*Spears*, *supra*, 153 Cal.App.3d at p. 87.)  *Spears* concluded that it must answer two questions:  "First 'Had defendants been advised of the statutory presumption against probation, would they have been willing to plead?'  Second, 'If the court had thought of the disfavored probation consequence, would it have revised its "probation likely" comment?' "  (*Ibid*.)  Thereafter, *Spears* held that the trial court should have "disclose[d] the full consequences of such a plea," which included the consequence of disfavored probation.  Accordingly, it reversed the trial court's denial of the motion to withdraw the plea.  (*Ibid*.)

Defendant maintains that *Spears* is analogous to this case, because like the record in *Spears*, the record here reflects a climate where it seemed that the grant of the section 17, subdivision (b) motion was likely.  And, defendant maintains that he pleaded no contest because the court led him to believe that the only condition precedent to its

9

granting of the section 17, subdivision (b) motion was approval by the victim's family. We agree.

During the change of plea hearing, defense counsel stated: "My client understands that the Court's inclination was to grant the misdemeanor. I did meet with the family on Tuesday. Nothing in the discussion that I had with the [victim's] family appeared to be contrary to the spirit of our negotiations. I've related to my client, I've discussed the case with him, he's prepared to go forward with the plea. [¶] If the motion, for some reason, is not granted, it's my understanding that he would get felony probation, although I've indicated to him, and he heard the Court indicate, that that's unlikely unless something happens between now and sentencing. And I've certainly advised him on that."

During the sentencing hearing, after the trial court declined to reduce the felony convictions to misdemeanors, defendant's counsel asserted that he had previously related to defendant that "the Court was strongly leaning in favor of granting the motion to reduce it to a misdemeanor," and that "[t]he biggest concern, at least at that time, was the position of the victim's family members. If the victim's family members were not opposed to, were not asking for a felony, the Court was very strongly leaning in favor of granting it."

We agree with the People that the record does not reflect that the court made an unequivocal promise to defendant that it would reduce the felony convictions to misdemeanors. However, the record supports defendant's claim that he pleaded guilty because he believed that the only condition precedent to the reduction of the felonies was approval by the victim's family.

Defendant's reliance on the court's statements is shown by clear and convincing evidence, premised by his defense counsel's representations to the court during the change of plea hearing and the sentencing hearing. And, as indicated in the change of plea hearing, defendant had already consulted with the victim's family, who had no

10

objection to the reduction of the felonies to misdemeanors. Accordingly, when the court decided not to reduce his felonies to misdemeanors based on an entirely different reason—his prior relationship with another 16-year-old girl when he was also a minor— the court should have permitted him to withdraw his plea. Defense counsel stated during the sentencing hearing that the fact that defendant had that prior relationship was part of the record and had been discussed by the parties. The trial court did not make any comments regarding this prior relationship during the change of plea hearing and made no indication that this was a factor that could sway its decision to reduce the felonies.

We acknowledge that " 'the mere fact that the defendant, knowing his rights and the consequences of his act, entered the plea under a hope of leniency presents no ground for the exercise of the discretion of the court.' " (*People v. Burkett* (1953) 118 Cal.App.2d 204, 210.) That is not what transpired here. Certainly, defendant was advised that he would face felony probation if the court did not grant his section 17, subdivision (b) motion. Defendant, however, was *also* advised that the court was "heavily inclined" to reduce the felonies and, based on the trial court's comments, was led to believe that the only factor preventing the court from reducing the felonies was an objection from the victim's family.

"Trial courts are expressly directed to give a liberal construction to the provisions of section 1018 in the interest of promoting justice." (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796-797.) Here, defendant has established good cause, because the record reflects that he relied on the trial court's statements that it would grant his section 17, subdivision (b) motion absent objection from the victim's family. Accordingly, we must hold that the trial court abused its discretion when it refused to allow him to withdraw his plea. Reversal is therefore required.[3]

---

[3] Because we conclude the trial court erred in denying his motion to withdraw his plea, we need not address defendant's other arguments on appeal.

11

**DISPOSITION**

The judgment is reversed.  The matter is remanded with instructions to allow defendant to withdraw his plea.  If he elects not to withdraw his plea, the judgment from which this appeal has been taken shall be reinstated.

 

 

 

_____

Premo, J.

WE CONCUR:

 

_____

Rushing, P.J.

 

_____

Márquez, J.