Filed 7/12/21  P. v. Barnett CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C091098 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F2910) |
| v. | |
| JAMES RYBURN BARNETT, | |
| Defendant and Appellant. | |

Defendant James Ryburn Barnett pleaded guilty to two counts of committing a lewd act by force in exchange for a stipulated sentence.  He appeals the denial of his motion to withdraw his plea contending:  (1) at the time of his plea his free will was overcome by duress, specifically the trial court's involvement in, and comments during, plea discussions; and (2) his appointed counsel[1] had a conflict of interest and therefore he

---

[1] Because two different attorneys represented defendant during these proceedings, the attorney who represented defendant through the plea will be referred to as appointed

1

received ineffective assistance of counsel.  Because the trial court's comments prior to the plea caused defendant to enter his plea under duress and he has shown resulting prejudice, we conclude defendant's motion to withdraw should have been granted.  Based on this conclusion, we need not address defendant's other claim regarding ineffective assistance of counsel.  We reverse the judgment and remand with instructions to allow defendant to withdraw his guilty plea, should he continue to pursue withdrawal after remand, or reinstate the judgment if defendant does not timely pursue his motion to withdraw.

BACKGROUND

The substantive facts underlying the offenses are not relevant to the disposition on appeal and are not recounted in detail.  Two of defendant's grandchildren reported to their mother that, years earlier, defendant had repeatedly molested them by inappropriately touching them.  At least one molestation included digital penetration.

An information charged defendant with sexual penetration with a foreign object on a victim under 14 years old (Pen. Code, § 289, subd. (j)),[2] four counts of lewd or lascivious acts with a child under 14 years old (§ 288, subd. (a)), and two counts of lewd or lascivious acts by force (§ 288, subd. (b)).[3]  The information also alleged defendant committed the section 288 offenses against more than one victim and was therefore eligible for a sentence of 15 years to life (§ 667.61, subd. (b)).

The parties engaged in plea negotiations.  Appointed counsel discussed various plea options with defendant as early as one month before entry of the plea.  She also

_____

counsel and the attorney who represented defendant in the postplea motions will be referred to as retained counsel.

[2]  Undesignated statutory references are to the Penal Code.

[3]  These last two charges were added to the complaint by stipulation of the parties so the charges could be used to get to the agreed 16-year sentence.

discussed with him the victims' statements and his recorded interview with law enforcement, explained he was facing a potential life sentence, and advised him she was concerned there was a high likelihood of conviction given the police reports, recorded interview, and his admissions. Defendant indicated in his discussions with appointed counsel that he wanted to resolve the case and enter a plea to minimize his sentencing exposure. With defendant's agreement, appointed counsel made a number of plea counteroffers to the district attorney, including one for a 10-year term. Although defendant initially admitted the digital penetration to appointed counsel, he denied the other claims, including all of those involving the second victim. As plea discussions continued, defendant was "waffling" on whether he should enter a plea. Defendant also told appointed counsel his statements in the police interview had been misinterpreted. They were not admissions, but "him recounting his understanding of the allegations made against him." He told her during the plea discussions he felt "it was unfair."

At a pretrial settlement conference, the trial court addressed defendant regarding the case. It stated:

"[Defendant], I wanted to have a couple discussions with you before – well, a discussion with you before I confirm your trial date because I think sometimes it's important to put your cards on the table, and I've been talking to the lawyers about what you're facing and what the facts of your case include. And so I want to remind you, and I don't want to embarrass you or shame you in any way, but I want to remind you your case, if you were to go to trial and get convicted of all the counts, you would be receiving life in prison. So you would not receive any opportunity to be out of custody for the rest of your life.

"And I want to remind you that the evidence against you is strong. I know you have family members here that are supportive of you and want you to go to trial and fight the charges, and that's certainly a position to take. But they're not you, and they're not the ones that are facing the rest of their lives in prison. I asked the lawyers for some of

3

the information from the case, and first of all, as you know, these are your biological daughter's adopted daughters.  The allegations are that over the course of years, and this is some time ago, you did have skin-to-skin contact with these girls.  You did touch them directly on the vagina.  You did penetrate them and you did admit this to your daughter and you made some incriminating statements at the time of your interview.[4]  So it's on tape.  It's there for the world to see.  The jury will hear it."

Defendant asked to speak, and the trial court told him to "hold on."  The court continued, "I just want you to listen.  There's going to be a transcript of what you said, and the jury will get a copy of that transcript.  And they're going to follow along with you, listening to your voice say these things.  So I wanted to remind you that you wrote a letter apologizing to [the victims] . . . .  This is your handwriting."

---

[4] The court was referring to a one-hour recorded interview with Shasta County Sheriff's Deputy Timothy Wiley.  During the interview, defendant initially denied the accusations and said his actions had been misinterpreted.  Later during the interview, when the officer said he was 100 percent certain defendant had molested the girls and a lengthy discussion about how lies build and become an avalanche, defendant stated, "I guess I did it, I don't know."  At different points in the interview, defendant denied the allegations, indicated that he and the girls were just playing, admitted a single incident of digital penetration with one of the girls might have happened, stated the victims were exaggerating the frequency of molestation, and admitted the girls were telling the truth.  He said, "one thing led to another," and when asked if the one victim had been "asking for it," defendant answered, "a little bit," and he also claimed both victims were flirtatious with him.  The victims were 9 and 12 years old when they were molested, and approximately 16 and 19 years old when the complaint was filed and this interview occurred.  At Wiley's suggestion and with his encouragement that "sometimes these things go a long ways," defendant wrote a letter of apology to both of the girls, saying "I want to tell both of you I am very sorry about [what] I've done to you.  Please forgive me it will not happen again I love both of you very much Grampa."

During the interview, defendant also indicated that the girls had been molested by an uncle before his daughter adopted them.  Defendant had difficulty providing clear answers and repeatedly indicated he had a hard time remembering what had just happened, let alone what happened years earlier.

4

The court then quoted the apology letter and stated "I want to remind you of what you told the officer. This is on tape."

Appointed counsel interjected and an unreported sidebar conference was held. Appointed counsel later testified[5] she had asked the trial court to stop its comments. She acknowledged while it was not uncommon for the court to reiterate what a defendant is facing if they go to trial, the court was discussing some of the evidence that the People had discussed in chambers. As such, appointed counsel felt the discussion was "going beyond the point where it's informing [defendant] of his . . . options or his risks, and approaching a place where it may have been putting pressure on him." Appointed counsel asked the court to stop its statements because "it was no longer productive and I didn't want any unfair pressure put on [defendant]." Appointed counsel also agreed that she felt the judge had "gone over the line in attempting to persuade [defendant] to take the deal." However, counsel did note during her testimony that she had told defendant he would most likely be convicted at trial; counsel also opined in response to a question from the prosecutor that defendant was not under "the legal definition of duress" at the time of his plea.

After the sidebar conference, the trial court continued:

"So, [defendant], once again, your lawyer is probably giving you copies of the documents that summarize some the things that you had said. So what I want to remind you, importantly, is this: You better reread what you said. You better take a look at it, because I'm sure that if it hasn't been transcribed, it will be transcribed. You admitted to the allegations. You did, and you made some statements that if a jury was to hear these

---

[5] This testimony occurred during the hearing on the motion to withdraw the plea, which was held before the same judge who had presided over the plea discussions and made the comments to defendant.

5

things – I don't think they would have any difficult determining that you are responsible for the charges.

"I'm telling you that not as the trial judge, I won't be handling your trial. I sit here in this department and I resolve cases every day and I've been doing it for years now. All I can tell you is looking at your case, it would not be a case that would be successful before a jury. So I want you to seriously think about whether or not you really want to go to trial, whether you want to do this, because you're going to be the one picking that jury with your lawyer, selecting those people from the community that are going to make a decision about what happens. And then you're also going to be the one that's going to be sitting there at the counsel table when these girls testify. And I assume other relatives are going to be testifying, too, and then you're going to be the one sitting there when the People play the tape that you spoke to the officer about.

"So I am just saying this because sometimes you need to have a little reality check. You know, you – I understand that this may have been something beyond your experience ever in your life other than during the times that it happened, and I am sure you have great regret, but you've got to be real particular about what your case is – what you are facing.

"So I – I am not – okay. Let me back up and also say this: You have an absolute right to take your case to a jury trial, absolute right, and you have – I don't want to in any way suggest to you that you not do what you should do or want to do. And your lawyer is an excellent lawyer and she is going to give you great advance [*sic*] and she is going to be a great trial lawyer for you, if you decide to want to go to trial. She'll do everything in her power to help you in your case. [¶] . . . [¶]

". . . So I don't want you to think in any way I'm trying to talk you out of going to trial because you have that right, but I do want to give you the benefit of some experience, my experience, in seeing these cases that we see on a regular basis here in court and, sadly, we see go to trial and we see what happens."

6

Defendant then conferred with his counsel briefly and counsel confirmed the trial date. The trial court offered that it would remain available in the event that "there's any change in position." The court then took a recess, and when it reconvened that same afternoon, the court was immediately notified that defendant would plead guilty to the two counts of lewd and lascivious conduct with force, pursuant to *People v. West* (1970) 3 Cal.3d 595 as to the issue of force, for a stipulated sentence of 16 years in state prison. In taking the plea, the trial court asked defendant whether he had been made any promises beyond those spoken about in court, whether he had been threatened in order to get him to enter the plea, whether he was under the influence of anything that would affect his judgment or ability to think clearly. Defendant's responses in the plea exchange are far from resolute and detailed here:

"THE COURT: What is your plea to the charge of lewd acts by force as to Victim Number 1?

"THE DEFENDANT: Guilty, I guess.

"THE COURT: Okay. Are you guilty?

"THE DEFENDANT: I guess.

"THE COURT: Well, it's not something you guess about. Either you're guilty or you're not guilty.

"THE DEFENDANT: The problem I'm having with this, what's on that tape, my daughter -- is what my daughter told me.

"(An off-the-record discussion was held with attorney/client.)

"THE DEFENDANT: Just go guilty.

"THE COURT: Okay. So are you, in fact, guilty of the crime in Count 6?

"THE DEFENDANT: I can't hear you.

"THE COURT: Are you, in fact, guilty of the crime as charged in Count 6?

"THE DEFENDANT: Yes, I guess.

"THE COURT:  And Count 7 is the same count.  That would be lewd or lascivious acts by force on Victim Number 2.  What is your plea?

"THE DEFENDANT:  Yes.

"THE COURT:  Guilty?

"THE DEFENDANT:  Guilty, I guess.

"THE COURT:  Counsel, do you join in these pleas?

"THE DEFENDANT:  There was no force in it.

"[APPOINTED COUNSEL]:  And, Your Honor, for the record, and I think the Court indicated this earlier, that the change charge alleging force was a stipulated agreement to reach a specified term.

"THE COURT:  Right.

"[APPOINTED COUNSEL]:  But the factual allegations were not indicative of any force.

"THE COURT:  True.  So, essentially, you're admitting to the force only to get this 16 years of prison, is that correct?

"THE DEFENDANT:  Yes.

"THE COURT:  Okay.  So it's a People versus West as the element of force. Other than that, it's a guilty plea as to the offense itself.

"THE DEFENDANT:  Are they saying that it was forced?

"THE COURT:  No.  No.  You're -- you are entering this plea, and because we want to get to a stipulated term, the element includes force, but you're not agreeing to that force.  You're just agreeing to the sentence, is that right?

"THE DEFENDANT:  I didn't have no sex with them.

"THE COURT:  Sentence.

"THE DEFENDANT:  Oh, sentence."

Defendant indicated on the plea form he had not been threatened to enter the plea. He also indicated he was entering the plea voluntarily and of his own free will.  The trial

8

court found that although defendant had some concerns based on the length of the term, he had knowingly and intelligently given up his rights, and the plea was voluntary.

Approximately two months after entry of the plea, and before judgment was entered, defendant obtained new counsel who filed a motion to withdraw his plea. The motion argued, among other things, that defendant should be permitted to withdraw his plea on the grounds he was unduly influenced by the court's comments, which overcame his free judgment. The motion proffered that defendant would testify he "would not have entered the plea had he not been pressured by the judge to do so," and the court's comments that his admissions on tape would be there for the world to see pressured him out of fear of public embarrassment. The motion included a short declaration by defendant that indicated, among other things, that defendant did not "remember what the Judge said other than her saying fifteen years then saying that was a mistake and said sixteen years, eight years per child" and that "after the judge spoke to [him], [he] felt like [he] didn't see [he] had any choice. . . . [He] didn't know [he] didn't have to take the plea" and "felt [he] had no choice but to plead guilty after the judge spoke to" him.

Defendant's appointed counsel testified at the hearing on the motion, including specifically about the sidebar discussions with the court about its plea discussions with defendant. In the context of addressing allegations of ineffective assistance of counsel made against her by defendant's new attorney, she also testified as to some of the avenues she had been pursuing as part of the defense. She sought, but had not received, juvenile records that potentially indicated the victims had been sexually abused by someone other than defendant, and that the victims might have been wrongfully attributing that conduct to defendant. Defendant had identified someone he thought might have sexually assaulted the victims in the past. Other family members also reported mother had a history of "unsavory boyfriends," who they felt might have engaged in inappropriate conduct with the victims. Appointed counsel's investigator had also discovered that the victims' mother had been married to a man, David Bull, who had

9

lived with mother and the victims during the relevant time period. Bull had had a nude photograph on his computer of one of the victims and had subsequently been convicted of child molestation and possession of child pornography.[6] Appointed counsel had requested, but not received before the plea, the recorded interviews or statements of mother or the victims. This information was necessary to explore any possible inconsistencies in their statements. As to defendant's interview, she considered getting an expert to testify as to false confessions. And, she was developing other ways to challenge the reliability of the statements of the victims. Some family members had suggested mother had a motive to falsely report the molestations. The victims and mother refused to speak with investigators. The public defender's files indicate that mother had told family members she wanted the charges dropped, the victims were refusing to testify, and mother would be contacting the district attorney's office to let them know the girls would not cooperate.

Defendant testified that the court talked to him on the day of the plea and told him if he took the matter to trial he would "never see daylight again." Defendant's testimony is recounted here:

"[RETAINED COUNSEL]: Okay. Now, when Judge Beatty talked to you that last day that [appointed counsel] represented you, do you remember how what she said made you feel?

---

[6] Defendant's appointed counsel also represented David Bull in those criminal proceedings. That prior representation served as the basis for the claim defendant received ineffective assistance of counsel based on a conflict of interest. The trial court did not let counsel explore this prior representation or any conflict of interest in the motion to withdraw hearing because it considered the matter outside the scope of the motion to withdraw.

10

"[DEFENDANT]: Well, the last day that she talked to me, she told me if I went – if I took it to trial, I would – I'd never see daylight again. In prison. And if I took the deal, it'd be – it would be 16 years.

"[RETAINED COUNSEL]: Okay. And how did that make you feel?

"[DEFENDANT]: Not very good.

"[RETAINED COUNSEL]: Okay.

"[DEFENDANT]: For something I didn't do."

And when asked why he took the 16-year deal, defendant responded "I thought [it] was a better choice than . . . not getting to see daylight again."

In making its ruling, the trial court noted it was defendant's burden to produce evidence of good cause to withdraw his plea. It stated it had no "doubt as to whether or not [defendant] willingly, thoughtfully, and knowing all of the facts that were there, he knew what happened. He's the gentleman that knows, beyond anyone else, what went on. And at that time . . . he entered a plea. And he did it at a time when the family wasn't present. And that's my recollection, that he didn't want them here. [¶] So, even if I'm wrong in that recollection, the point being, he entered that plea and that was his intention. His intention. He did not want to subject those little girls to that trial. And he said as much in the letter that was discussed between Counsel and the Court when we were back in Chambers. So my point being is that I observed the change of plea and I find that [defendant] did, in fact, intend to take this plea and he took it willingly, voluntarily, and with full knowledge of the consequences." Accordingly, the court denied the motion to withdraw the plea.

The trial court sentenced defendant in accordance with the plea to 16 years in prison, and awarded him 624 days of presentence custody credits. The court did not order defendant to pay any restitution fines, probation or parole revocation fines, operations assessments, or criminal conviction assessments.

The trial court granted defendant's request for a certificate of probable cause.

11

DISCUSSION

Defendant contends the trial court abused its discretion when it denied his motion to withdraw his plea based on the court's statements at the pretrial hearing. He contends these statements effectively coerced him and rendered his plea involuntary.

"A guilty plea may be withdrawn any time before judgment for good cause shown. (Pen. Code, § 1018; [citation].)" (*People v. Hunt* (1985) 174 Cal.App.3d 95, 102; accord, *People v. Cruz* (1974) 12 Cal.3d 562, 565.) The defendant must establish good cause by clear and convincing evidence, and in order to establish good cause, the defendant must show that, when the guilty plea was entered, the defendant was operating under mistake, ignorance, inadvertence, fraud, duress, or any other factor which overcame the defendant's free will or judgment. (*Cruz,* at p. 566; *People v. Dillard* (2017) 8 Cal.App.5th 657, 665.)

By its terms, section 1018 requires courts to err on the side of granting a motion to withdraw a plea, and when in doubt, a prejudgment motion to withdraw a plea should be granted. (*People v. Spears* (1984) 153 Cal.App.3d 79, 87; see *People v. Patterson* (2017) 2 Cal.5th 885, 894.) " '[T]he withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty.' " (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1210.) " 'Withdrawal of a guilty plea is left to the sound discretion of the trial court. A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion.' [Citations.]" (*Id.* at p. 1208; see *People v. Weaver* (2004) 118 Cal.App.4th 131, 146 (*Weaver*).)[7] Defendant must also

---

[7] Defendant claims that we should apply the de novo standard of review to the denial of his motion to withdraw his plea, as the underlying substantive right being asserted, the

12

demonstrate prejudice, that is, that he would not have accepted the plea had it not been for the improper factor.  (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.)  A defendant "has a constitutional right to be free of duress as he pleads to a criminal charge."  (*People v. Williams* (1969) 269 Cal.App.2d 879, 885.)

"Generally, sound discretion 'is compatible only with decisions "controlled by sound principles of law, . . . free from partiality, not swayed by sympathy or warped by prejudice . . . ." [Citation.]' [Citation.] ' "[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." ' [Citations.] [¶] A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

Although California law does not preclude judicial involvement in plea negotiations, " 'courts have expressed strong reservation[s] about the practice.' [Citation.]" (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 124 (*Sandoval*); *id.* at pp. 123-124; *Weaver, supra*, 118 Cal.App.4th at p. 148.)

There are at least three reasons why courts should be cautious in becoming involved in plea negotiations.  "First, it diminishes the possibility of judicial coercion of guilty pleas regardless of whether the coercion actually results in an involuntary plea.  Second, such involvement may impair the court's impartiality since a judge who suggests or encourages a plea bargain may feel a personal stake in an agreement and may resent a defendant who rejects the court's advice.  Third, judicial participation in plea discussions creates a misleading impression of the judge's role.  A judge participating in plea negotiations can often appear not to be a neutral arbiter but rather an advocate for the

---

voluntariness of the plea, is reviewed de novo.  Defendant has not cited, and independent research has not revealed, any authority for applying a special standard of review to motions to withdraw a plea based on the underlying right asserted.  We decline to adopt one here.

resolution that the court has suggested." (*Weaver, supra*, 118 Cal.App.4th at pp. 146-147.)

However, "not every instance of judicial involvement in plea negotiations results in duress." (*Weaver, supra*, 118 Cal.App.4th at pp. 149-150.) A court's involvement in plea negotiations is not a concern where the judge is able to "maintain total neutrality and at the same time probe continually for a common meeting ground." (*Id*. at p. 148.) "Judges can, in appropriate cases and in a reserved manner, play a useful part in that process. However, when the trial court abandons its judicial role and thrusts itself to the center of the negotiation process and makes repeated comments that suggest a less-than-neutral attitude about the case or the defendant, then great pressure exists for the defendant to accede to the court's wishes." (*Id*. at p. 150.) If the record does show that a trial court became overly involved in plea negotiations and applied undue pressure to coerce a defendant into pleading guilty, the court has abused its discretion, the plea is not voluntary, and the defendant should be allowed to withdraw it. (*Sandoval, supra*, 140 Cal.App.4th at pp. 125-127.)

Defendant rests his claim of judicial coercion primarily on *Weaver, supra*, 118 Cal.App.4th 131. In *Weaver*, a child molestation case, the trial judge repeatedly, and at a number of pretrial hearings, urged the defendant to accept the prosecution's plea offer. The trial judge noted defendant's potential sentence was quite severe, the alleged acts were predatory, and expressed concern about the victims being forced to testify. (*Id*. at pp. 135-138.) The court stated in its experience it was much better to resolve these cases by a plea, and the parties had to be realistic. (*Id*. at p. 136.) Based on images found on Weaver's computer, the court opined a sentence of 15 years to life would be fair. (*Id*. at p. 135.) The trial court informed Weaver that the case would change once the victims testified before the jury and it would be much more emotional. (*Id*. at pp. 135-136.)

The trial court indicated it would probably admit testimony of additional victims in uncharged matters and allow admission of some of the child pornography found on the

Weaver's computer. The court characterized the prosecution's evidence as strong, damning, and overwhelming. (*Weaver, supra*, 118 Cal.App.4th at pp. 137-139.) The court also stated that the evidence demonstrated Weaver was a pedophile in denial, and opined that in view of the evidence, he would be convicted. (*Id.* at pp. 137-138.) The court stated photographs would expose the jury and the little girls to the " 'monster in the closet' " and " 'the ugliness, the warts, the green stuff dripping from its mouth and the horns and the smell.' " (*Id.* at p. 138.) And, the trial court repeatedly stated the trial was going to be ugly. (*Ibid.*) On the date the matter was set for trial, Weaver entered into a plea agreement. (*Id.* at p. 140.)

Weaver filed a motion to withdraw his plea, claiming his plea was entered under duress, in that he had felt pressured to accept the plea by counsel's urging and the trial court's statements and apparent attitude during the proceedings. (*Weaver, supra* 118 Cal.App.4th at pp. 141, 149.) Weaver indicated the trial court's comments had been a major source of pressure that led to his plea. (*Id.* at p. 149.) The trial court denied the motion. (*Id.* at pp. 141-145.) The Court of Appeal concluded the trial court had crossed the line from neutral mediation to advocacy given its statements that defendant would be convicted, his concern about the victims having to testify, and the level and manner of its involvement in the negotiations at that particular stage of the proceedings. The Court of Appeal also concluded these comments suggested a "less-than-neutral attitude about the case or the defendant," which exerted "great pressure" on the defendant to accept the plea. (*Id.* at pp. 149-150.) Accordingly, the Court of Appeal reversed the denial of Weaver's motion to withdraw his guilty plea based upon the coercive comments of the trial judge during plea discussions. (*Id.* at p. 150.)

Certainly, the trial court here did not go as far as the court in *Weaver*, the comments to defendant occurred over the course of one hearing and were not as inflammatory in describing the nature of the case and the evidence. And, we do not doubt it was the court's intention to facilitate a plea bargain in everyone's interest.

15

However, the court's comments were not so limited as to maintain total neutrality. Rather, the comments implicated the very concern raised in *Weaver*, that by its involvement in the plea discussion, the court appeared to not be a neutral arbiter but rather an advocate.

The trial court did not restrain its comments to seeking a common meeting ground between the parties such as advising defendant of his likely sentence if convicted, including actual time likely to be served, procedural matters, or the process of a trial. Rather, the court recited the evidence against defendant, characterized it as strong, and stated it would be admitted and that the jury and his family would hear it.

The court repeatedly stated defendant "did" the specific acts underlying the charges, such as having skin-to-skin contact and digitally penetrating the victims, and had made incriminating statements to the law enforcement officers, rather than merely pointing out that the People purported to have admissible evidence in that regard. The court emphasized all of that evidence would be admitted before the jury, in defendant's own words and voice. The court read aloud defendant's letter apologizing to the victims. Then, despite appointed counsel interjecting and advising the court she believed it was crossing the line from neutrality to placing undue pressure on defendant, the court continued. It told defendant he "better reread" what he had said in the interview and his admissions, because a jury hearing those things would not find it difficult to convict him. The court mentioned its years of experience and informed defendant of its opinion, based on that extensive experience, that defendant would be convicted. The court also told defendant that in a trial, the girls and other family members would testify. The court stated it was giving defendant a "reality check" and that it saw regularly, "sadly" what happens when cases go to trial. Even after counsel announced they would confirm the trial date, the trial court reminded defendant and counsel that: "I'm saying to you, you can place the matter back on calendar if there's any change in position. Okay?" As in *Weaver,* the court repeatedly characterized the state of the evidence against defendant,

16

and encouraged the defendant to take a plea since he was facing a long period of prison time, and that based on its experience, the defendant would be convicted. (*Weaver, supra*, 118 Cal.App.4th at pp. 135-138.) In so doing, the court did not maintain its neutrality during the plea discussions. (*Sandoval, supra*, 140 Cal.App.4th at p. 127.)

While the trial court's statements may have been accurate, as far as they went, they did not maintain the neutrality required of a judge trying to get the parties to agree to a plea. That the court did not maintain its neutrality is further evidenced by the fact the court did not exert equal pressure on the prosecution to move toward any common ground to facilitate a plea agreement. The court did not suggest any weaknesses that might exist in the prosecution's case. At the time of these comments by the court, appointed counsel had not completed her investigation and had not received information on other possible suspects, at least two of whom had been specifically identified. Those investigations could have exposed vulnerabilities in the prosecution's case and the credibility of the reporting parties, including inconsistent statements, confusion by the victims in identifying the perpetrator of their molestations, or motive for falsehoods by mother. In addition, there was an indication that the victims and mother would not cooperate at trial, potentially undercutting the strength of the prosecution's case. The court's comments also assume, and state, the evidence of the police interview would be admissible at trial, a fact not established at the time of the plea. Moreover, in the police report of the interview, defendant's statements appear to be more clearly admissions than they might appear to a jury hearing the actual recording of the interview in which the full context of the statements is available. The interview itself included defendant's denials, his uncertainty in many responses, his claims of memory difficulty, and the nature of the officer's questioning which led to the admissions. Defendant's family members potentially provided additional context for the statements in the interview. The family members described defendant as "simple" and easily influenced, and could have testified to that effect. Defendant also had significant familial support and no criminal record,

17

factors which might have made him more sympathetic to a jury. We are not saying by these observations that defendant would be successful if the matter went to trial. We are only pointing out that the court's statements discussing the strength of the case against defendant provided only one side of the case and did not appropriately maintain the neutrality required of the court in plea discussions.

Defendant had been engaging in plea discussions with appointed counsel for at least one month before the court's comments. During those discussions, appointed counsel advised him of many of the challenges he faced if he took this matter to trial. Despite her advisements, before the court's comments, defendant maintained his innocence as to many of the allegations, offered an explanation for his incriminating statements in the interview, and vacillated over wanting to enter a plea at all. Even as he changed his plea to guilty, he could only respond "I guess" when asked if he was guilty of the charges. As we have set forth in detail above, he testified at the hearing on the motion to withdraw that the court's comments to him at the settlement hearing caused him to feel as though he had no choice other than to plead guilty, or he would never see the light of day again. He specifically linked the court's comments to his plea by adding that pleading guilty was a better choice than "not getting to see daylight again." After the court's comments, he declared that he felt he had no choice but to plead guilty, and the only evidence to the contrary is the form plea agreement executed the same day as the coercive hearing at issue here. This further supports the conclusion that the court's "remarks served to increase the psychological pressure on" defendant. (*Sandoval, supra*, 140 Cal.App.4th at p. 126.)

The legal principles and policies governing the trial court's exercise of discretion required it to err on the side of granting the prejudgment motion to withdraw the plea, particularly in a case in which the least influence caused defendant to plead guilty where there was any defense at all. (*People v. Cluff, supra,* 87 Cal.App.4th at p. 998; *People v. Huricks, supra,* 32 Cal.App.4th at p. 1210.) The court's comments during plea

18

negotiations were more than the "least influence" and there were possible defenses available to defendant. Based on all the foregoing, we conclude the court abused its discretion in denying the motion to withdraw on the grounds that the court's comments caused defendant to be under duress and prejudiced him.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with instructions to allow defendant to withdraw his guilty plea, should he continue to pursue withdrawal after remand, or reinstate the judgment if defendant does not timely pursue his motion to withdraw. In the interest of justice, the matter shall be reassigned to a different judge(s) for any further proceedings.


 /s/
HOCH, J.


We concur:


 /s/
DUARTE, Acting P. J.


 /s/
KRAUSE, J.


19